**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| NOVITAZ, INC.,<br>a Delaware Corporation,<br><br>    Plaintiff and<br>    Counter-Defendant,<br><br> v.<br><br>SHOPKICK, INC.,<br>a Delaware Corporation,<br><br>    Defendant and<br>    Counterclaimant | Case No. 3:13-CV-01613-JBA<br><br>JURY TRIAL DEMANDED |

## RULE 26(F) REPORT OF PARTIES' PLANNING MEETING

Date Complaint Filed:          November 4, 2013

Date Complaint Served:          November 20, 2013

Date of Defendant's Appearance:     February 14, 2014

Pursuant to Fed. R. Civ. P. 16(b), 26(f) and D. Conn. L. Civ. R. 16, a conference was held on March 28, 2014. The participants were:

Stefan Stein for Plaintiff, Novitaz, Inc. ("Novitaz");

Nagendra Setty and George Kanabe for Defendant, shopkick, Inc. ("shopkick").

## I. CERTIFICATION

Undersigned counsel certify that, after consultation with their clients, they have discussed the nature and bases of the parties' claims and defenses and any possibilities for achieving a prompt settlement or other resolution of the case and, in consultation with their clients, have developed the following proposed case management plan. Counsel further certify that they forwarded a copy of this report to their clients.

1

## II. JURISDICTION

**A.      Subject Matter Jurisdiction:**

Novitaz's Complaint and Jury Demand ("Complaint") is brought pursuant to 28 U.S.C. § 1338(a).

**B.      Personal Jurisdiction:**

This Court has jurisdiction over Plaintiff Novitaz.  Defendant shopkick denies that this Court has jurisdiction over it.  However, rather than move to dismiss for personal jurisdiction, Defendant has moved to transfer this action to the Northern District of California, where both parties reside.  *See* Dkt. 33.

## III. BRIEF DESCRIPTION OF CASE

**A.      Plaintiff's Statement of Claims:**

Plaintiff Novitaz is an innovator in the location-based services sector and has a growing portfolio of patents relating to that technology.  Novitaz's two-count complaint alleges that shopkick has infringed at least one claim of the respective patents-in-suit, namely of U.S. Patent No. 7,962,361 ("'361 Patent"), entitled "Customer Relationship Management System for Physical Locations", and U.S. Patent 8,229,787 ("'787 Patent") entitled "Customer Relationship Management System for Physical Locations" (collectively, "the patents-in-suit").

Novitaz seeks preliminary and permanent injunctive relief, together with damages under 28 U.S.C. § 284.  Novitaz also alleges that this is an "exceptional" case under 28 U.S.C. § 285 entitling it to an award of treble damages, attorneys' fees, and costs.

**B.      Defendant's Statement of Defenses and Counterclaims:**

Shopkick is a Silicon Valley startup that provides a location-based mobile application and related services to shoppers.  Shopkick has asserted affirmative defenses and counterclaims of

non-infringement, invalidity, estoppel, and other equitable and legal defenses.

Shopkick has moved to transfer this action to the Northern District of California (Dkt. 33) and agrees to the proposed schedule below without prejudice to that motion.

## IV. STATEMENT OF UNDISPUTED FACTS

Counsel certify that they have made a good faith attempt to determine whether there are any material facts that are not in dispute. The parties state that the following material facts are undisputed:

1. The '361 and '787 Patents asserted in Novitaz's Complaint were published by the United States Patent and Trademark Office.

## V. CASE MANAGEMENT PLAN

**A.      Standing Order on Scheduling Civil Cases**

The parties request modification (and addition) of the deadlines in the Standing Order on Scheduling in Civil Cases as detailed in the Schedule of attached **Exhibit A**.

**B.      Scheduling Conference with the Court.**

The parties do not request a pretrial conference with the Court before entry of a scheduling order pursuant to Fed. R. Civ. P. 16(b).

**C.      Early Settlement Conference**

1. The parties certify that they have considered the desirability of attempting to settle the case before undertaking significant discovery or motion practice.  Settlement is unlikely at this time.

**Defendant's Statement:**

1. Defendant shopkick believes that, in the event this case is not transferred to the Northern District of California (*see* Dkt. 33), settlement may be enhanced by the Court

entertaining an early summary judgment motion on non-infringement.

2. The parties do not request an early settlement conference at this time.

3. Should a settlement conference be ordered, the parties prefer a settlement conference with the presiding judge or a magistrate judge.

4. The parties do not request a referral for alternative dispute resolution pursuant to D. Conn. L. Civ. R. 16.

**D.     [Intentionally Left Blank]**

**E.     Discovery**

a. The parties anticipate that discovery will be needed on the following subjects:

**Plaintiff's Statement**:

Discovery will be needed on all issues relevant to Novitaz's claims of patent infringement and damages, and to shopkick's affirmative defenses and counterclaims, if any, including any documents and things listed in shopkick's Statement below.

1.      Novitaz will require discovery on shopkick's location-based services systems, including the operation therefor from a technical standpoint and including all commercialization efforts, and damages-related discovery including revenue and profit and loss, as well as royalty-related discovery regarding licensing, agreements and other documents relevant to the *Georgia Pacific* factors in determining a reasonable royalty.

2.      Whether the patents-in-suit are infringed.

3.      What a reasonable royalty is for the infringement according to the *Georgia Pacific* factors, to wit:

(i)      Whether the patent owner had established a royalty for the patented invention, for example, by granting other licenses at that royalty.

4

(ii)     Royalties paid by Defendant or by others for patents comparable to the accused technology.

(iii)    Whether or not Plaintiff had a policy of licensing or not licensing the patents.

(iv)    Whether or not Plaintiff and Defendant are competitors.

(v)     Whether being able to use the patented invention helps in the making sales or other products or services.

(vi)    The profitability of the product made using the patents, and whether or not it is commercially successful or popular.

(vii)   The advantages and benefits of using the patented inventions over non-infringing products or services not claimed in the patents-in-suit.

(viii)  The extent of Defendant's use of the patented invention and the value of that use to Defendant.

(ix)    Whether or not there is a portion or percentage of the profit or selling price that is customarily paid in the location-based services industry for use of patented inventions comparable to the inventions claimed in the patents-in-suit.

(x)     The portion of the profit that is due to the patented inventions, as compared to the portion of the profit due to other factors, such as unpatented elements or unpatented manufacturing processes, or features or improvements developed by Defendant.

(xi)    Expert opinions as to what would be a reasonable royalty.

4.     What is the measure of lost profits for the infringement according to a *Panduit* analysis, including the absence of acceptable non-infringement substitutes and lost profits due to price erosion/cost escalation.

5.      Any invalidity and unenforceability issues identified by Defendant.

Novitaz reserves the right to seek discovery on any and all other topics pertinent to this dispute that may be identified based on initial disclosures and further proceedings in the case.

**Defendant's Statement**:

Defendant shopkick will require discovery regarding Plaintiff Novitaz's claims and Defendant's defenses and counterclaims, including but not limited to the following:

1.      The inventorship of the patents-in-suit.

2.      Plaintiff's claim of patent infringement against Defendant.

3.      Plaintiff's rights, if any, in the patents-in-suit.

4.      The preparation, filing, prosecution and issuance of applications for the patents-in-suit and any related applications or patents in the United States or abroad.

5.      Plaintiff's licensing of the patents-in-suit and any related applications or patents.

6.      Plaintiff's practice of the alleged inventions disclosed in the patents-in-suit, if any.

7.      Plaintiff's interpretations of each patent claim at issue and/or each term therein.

8.      Scientific, industry, trade, and other interpretation of each patent claim at issue and/or each term therein.

9.      The validity of the patents-in-suit.

10.     The conception and reduction to practice of the alleged inventions claimed in the patents-in-suit.

11.     Prior art bearing on the validity, enforceability and/or interpretation of

6

each patent claim at issue, including knowledge of prior art by the named inventors and others involved in the preparation, filing and/or prosecution of the applications that resulted in the patents-in-suit.

12.     Plaintiff's compliance with patent marking and notice requirements in connection with the patents-in-suit.

13.     Plaintiff's pre-filing investigations and bases for asserting patent infringement in its complaint in this action.

14.     Plaintiff's knowledge of alleged infringement by Defendant, and Plaintiff's notice to Defendant of such alleged infringement.

15.     Plaintiff's alleged damages, if any, including lost profits and a reasonable royalty.

16.     Plaintiff's failure to seek a preliminary injunction.

17.     Plaintiff's alleged entitlement to an injunction

18.     All other relief sought by Plaintiff.

Defendant reserves the right to seek discovery on any and all other topics pertinent to this dispute that may be identified based on initial disclosures and further proceedings in this case.

b.     Initial Disclosures under Rule 26(a)(1) will be exchanged in accordance with the Schedule of Exhibit A.  Fact discovery may be commenced in accordance with the Schedule of Exhibit A.

c.     Discovery will be conducted in accordance with the Schedule of Exhibit A.

d.     All discovery will be completed (not propounded) in accordance with the Schedule of Exhibit A unless extended by a new Scheduling Order.

e.     The parties anticipate that each party will require a total of ten (10) depositions of

fact witnesses (including 30(b)(6) witnesses).

      f.      An unlimited number of requests for admission as to authenticity of documents are permitted, but a maximum of 35 additional requests are permitted for each party.  The parties do not otherwise propose modifying the discovery limitations set forth in the Federal Rules of Civil Procedure.

      g.      The parties intend to call expert witnesses at trial.

      h.      Each party will designate all trial experts and provide opposing counsel with reports from retained experts on issues on which they bear the burden of proof pursuant to Fed. R. Civ. P. 26(a)(2) in accordance with the Schedule of Exhibit A unless extended by a new Scheduling Order. Each party will designate all trial experts and provide opposing counsel with responsive reports from retained experts on issues on which they do not bear the burden of proof pursuant to Fed. R. Civ. P. 26(a)(2) in accordance with the Schedule of Exhibit A unless extended by a new Scheduling Order.  The parties agree to the limitations on expert discovery set forth in Rule 26 of the Federal Rules of Civil Procedure, and agree not to seek discovery regarding drafts of expert reports (including notes) or communications between experts and counsel, unless relied upon by the expert in forming his or her opinions.  The parties therefore agree that only final expert reports served on an opposing party and the facts or data which the expert considered in forming his or her opinions are discoverable.

      i.      A damages analysis will be provided by any party who has a claim or counterclaim for damages in accordance with the Schedule of Exhibit A.

      j.      The undersigned discussed the disclosure and preservation of electronically stored information, including, but not limited to, the form in which such data shall be produced, search terms to be applied in connection with the retrieval and production of such information, the

location and format of electronically stored information, appropriate steps to preserve electronically stored information, and the allocation of costs of assembling and producing such information.  The parties agree to, and hereby adopt, Judge Rader's Model Order Regarding E-Discovery in Patent Cases, attached hereto as **Exhibit B**.

      k.      Undersigned counsel have discussed discovery procedures that minimize the risk of waiver of privilege or work-product protection, including procedures for asserting privilege claims after production. The parties agree to the following procedure for asserting claims of privilege after production:

      1.      The parties and their counsel will take reasonable steps to identify and prevent disclosure of information protected by the attorney-client privilege, work-product doctrine, or any other privilege or immunity ("Privileged Material") prior to the disclosure of any such information to any Receiving Party.

      2.      If, however, a Producing Party discovers the disclosure of Privileged Material, that Production Party may, within five (5) business days of discovery of such Privileged Material, request in writing that the Privileged Material be returned ("Clawback Request").

      3.      Because each Party will take reasonable steps to identify and prevent disclosure of Privileged Material, any disclosure of Privileged Material will be presumed to be inadvertent in accordance with Federal Rule of Evidence 502(b).

      4.      If a Producing Party makes a Clawback Request, no Receiving Party may thereafter contend that the disclosure operated as a waiver of any privilege or immunity that might attach to the Privileged Material.

      5.      Upon receipt of a Clawback Request, the Receiving Party

shall immediately return or destroy any and all copies of such inadvertently produced Privileged Material, including any and all copies distributed to others (e.g., experts, consultants, vendors), and shall immediately destroy or sequester any notes or memoranda that disclose or discuss the contents of such documents. The Receiving Party shall immediately inform the Producing Party if the Receiving Party has sequestered any notes or memoranda. The Producer must preserve any inadvertently produced document(s) until all disputes regarding the discoverability of the document(s) have been resolved.  If the Receiving Party has sequestered any notes or memoranda pursuant to this paragraph, then the Receiving Party shall destroy all sequestered notes and memoranda within five (5) business days of a court order determining that the inadvertently produced material is protected by the attorney-client privilege, work-product doctrine, or any other privilege or immunity.

6.     Within ten (10) business days of the Clawback Request, the Producing Party shall provide the Receiving Party with a privilege log for the inadvertently produced Privileged Material identified in the Clawback Request.

7.     Nothing herein shall prevent the Receiving Party from challenging the propriety of the attorney-client privilege or work-product immunity or other applicable privilege or immunity designation by submitting a written challenge to the Court.

l.     The parties anticipate that this matter will involve confidential material and anticipate submitting a proposed Protective Order the Court.  To the extent the parties cannot agree on a proposed Protective Order, they anticipate submitting competing proposals to the Court.

m.      The parties agree that any duty to log documents and materials containing information claimed to be protected by the attorney-client privilege or work product doctrine

shall not extend to the logging of communications with its counsel following the commencement of this action.

**F.      Dispositive Motions**

Dispositive motions will be filed in accordance with the Schedule of Exhibit A unless modified by a new Scheduling Order.

**G.      Joint Trial Memorandum**

The joint trial memorandum required by the Standing Order on Trial Memoranda in Civil Cases will be filed at least forty-five (45) days before the start of trial absent any pending dispositive motions.

**H.      Patent Disclosures**

**1.      Identification of Asserted Claims:** In accordance with the Schedule of Exhibit A, a party claiming patent infringement shall identify no more than ten (10) claims of each patent-in-suit that is allegedly infringed by each opposing party.

**2.      Initial Infringement Contentions:** In accordance with the Schedule of Exhibit A, a party claiming patent infringement shall serve the following information for each identified, asserted claim:

(a)      The applicable statutory subsections of 35 U.S.C. §271 asserted;

(b)      Separately for each asserted claim, each accused apparatus, product, device, process, method, act, or other instrumentality ("Accused Instrumentality") of each opposing party of which the party is aware.  This identification shall be as specific as possible. Each product, device, and apparatus shall be identified by name or model number, if known. Each method or process shall be identified by name, if known, or by any product, device, or apparatus which, when used, allegedly results in the practice of the claimed method or process;

11

(c)     A chart identifying specifically where each limitation of each asserted claim is found within each Accused Instrumentality, including for each limitation that such party contends is governed by 35 U.S.C. § 112(6), the identity of the structure(s), act(s), or material(s) in the Accused Instrumentality that performs the claimed function.

(d)     For each claim which is alleged to have been indirectly infringed, an identification of any direct infringement and a description of the acts of the alleged indirect infringer that contribute to or are inducing that direct infringement.  Insofar as alleged direct infringement is based on joint acts of multiple parties, the role of each such party in the direct infringement must be described.

(e)     Whether each limitation of each asserted claim is alleged to be literally present or present under the doctrine of equivalents in the Accused Instrumentality;

(f)     For any patent that claims priority to an earlier application, the priority date to which each asserted claim allegedly is entitled; and

(g)     If a party claiming patent infringement wishes to preserve the right to rely, for any purpose, on the assertion that its own apparatus, product, device, process, method, act, or other instrumentality practices the claimed invention, the party shall identify, separately for each asserted claim, each such apparatus, product, device, process, method, act, or other instrumentality that incorporates or reflects that particular claim.

(h)     If a party claiming patent infringement alleges willful infringement, the basis for such allegation.

(i)     With its Initial Infringement Contentions, the party claiming patent infringement shall produce to each opposing party or make available for inspection and copying the following:

12

(i)     Documents (e.g., contracts, purchase orders, invoices, advertisements, marketing materials, offer letters, beta site testing agreements, and third party or joint development agreements) sufficient to evidence each discussion with, disclosure to, or other manner of providing to a third party, or sale of or offer to sell, or any public use of, the claimed invention prior to the date of application for the patent in suit.  A party's production of a document as required herein shall not constitute an admission that such document evidences or is prior art under 35 U.S.C. § 102;

(ii)    All documents evidencing the conception, reduction to practice, design, and development of each claimed invention, which were created on or before the date of application for the patent in suit or the priority date being asserted, whichever is earlier;

(iii)   A copy of the file history for each patent in suit; and

(iv)    All documents evidencing ownership of the patent rights by the party asserting patent infringement.

(v)     If a party alleges that any of its own apparatus, product, device, process, method, act, or other instrumentality practices the claimed invention, documents sufficient to show the operation of any aspects or elements of such instrumentalities the patent claimant relies upon as embodying any asserted claims.

(vi)    The producing party shall separately identify by production number which documents correspond to each category.

**3.      Initial Invalidity Contentions:** In accordance with the Schedule of Exhibit A, each party opposing a claim of patent infringement shall serve on all parties its "Invalidity Contentions" which shall contain the following information:

(a)     The identity of each item of prior art that allegedly anticipates each

asserted claim or renders it obvious.  Each prior art patent shall be identified by its number, country of origin, and date of issue.  Each prior art publication shall be identified by its title, date of publication, and where feasible, author and publisher.  Prior art under 35 U.S.C. § 102(b) shall be identified by specifying the item offered for sale or publicly used or known, the date the offer or use took place or the information became known, and the identity of the person or entity which made the use or which made and received the offer, or the person or entity which made the information known or to whom it was made known.  Prior art under 35 U.S.C. § 102(f) shall be identified by providing the name of the person(s) from whom and the circumstances under which the invention or any part of it was derived.  Prior art under 35 U.S.C. § 102(g) shall be identified by providing the identities of the person(s) or entities involved in and the circumstances surrounding the making of the invention before the patent applicant(s);

(b)      Whether each item of prior art anticipates each asserted claim or renders it obvious.  If obviousness is alleged, an explanation of why the prior art renders the asserted claim obvious, including an identification of any combinations of prior art showing obviousness;

(c)      A chart identifying where specifically in each alleged item of prior art each limitation of each asserted claim is found, including for each limitation that such party contends is governed by 35 U.S.C. § 112(6), the identity of the structure(s), act(s), or material(s) in each item of prior art that performs the claimed function; and

(d)      Any grounds of invalidity based on 35 U.S.C. § 101, indefiniteness under 35 U.S.C. § 112(2) or enablement or written description under 35 U.S.C. § 112(1) of any of the asserted claims.

(e)      With its Initial Invalidity Contentions, the party opposing a claim of patent infringement shall produce or make available for inspection and copying:

14

(i)      Source code, specifications, schematics, flow charts, artwork, formulas, or other documentation sufficient to show the operation of any aspects or elements of an Accused Instrumentality identified by the patent claimant in its Patent L.R. 3-1(c) chart; and

(ii)      A copy or sample of the prior art identified pursuant to Patent L.R. 3-3(a) which does not appear in the file history of the patent(s) at issue.  To the extent any such item is not in English, an English translation of the portion(s) relied upon shall be produced.

(iii)      The producing party shall separately identify by production number which documents correspond to each category.

**4.      Final Infringement Contentions:** In accordance with the Schedule of Exhibit A, a party claiming patent infringement may amend its Initial Infringement Contentions and serve Final Infringement Contentions, absent undue prejudice to the non-amending party, if:

(a)      a claim construction by the Court differs from that proposed by the party seeking amendment and materially impacts the allegations in the Initial Infringement Contentions; or

(b)      the party discovers nonpublic information about the Accused Instrumentality which was not discovered, despite diligent efforts, before the service of the Initial Infringement Contentions, and such nonpublic information materially impacts the allegations in the Initial Infringement Contentions.

**5.      Final Invalidity Contentions:** In accordance with the Schedule of Exhibit A, a party claiming patent invalidity may amend its Initial Invalidity Contentions and serve Final Invalidity Contentions, absent undue prejudice to the non-amending party, if:

(a)      the party claiming patent infringement has amended its Initial Infringement Contentions; or

(b)      the party discovers material, prior art which was not discovered, despite earlier diligent search, before the service of the Initial Invalidity Contentions.

I.      **Claim Construction**

1.      **Disclosure of Claim Terms for Construction:** In accordance with the Schedule of Exhibit A, each party shall serve on each other party a list of claim terms which that party contends should be construed by the Court, and identify any claim term which that party contends should be governed by 35 U.S.C. § 112(6).  The parties shall thereafter meet and confer for the purposes of limiting the terms in dispute by narrowing or resolving differences and facilitating the ultimate preparation of a Joint Claim Construction Statement.

2.      **Exchange of Proposed Claim Constructions:** In accordance with the Schedule of Exhibit A, the parties shall simultaneously exchange proposed constructions of each term identified by either party for claim construction.  Each such proposed construction shall also, for each term which any party contends is governed by 35 U.S.C. § 112(6), identify the structure(s), act(s), or material(s) corresponding to that term's function.  At the same time, the parties shall also identify all references from the specification or prosecution history that support its proposed construction and designate any supporting extrinsic evidence including, without limitation, dictionary definitions, citations to learned treatises and prior art, and testimony of percipient and expert witnesses.  Extrinsic evidence shall be identified by production number or by producing a copy if not previously produced.  With respect to any supporting witness, percipient or expert, the identifying party shall also provide a description of the substance of that witness' proposed testimony that includes a listing of any opinions to be rendered in connection with claim construction.  The parties shall thereafter meet and confer for the purposes of narrowing the issues and finalizing preparation of a Joint Claim Construction Statement.

**3.     Joint Claim Construction Statement:** In accordance with the Schedule of Exhibit A, the parties shall complete and file a Joint Claim Construction Statement, which shall contain the following information:

(a)     The construction of those terms on which the parties agree;

(b)     Each party's proposed construction of each disputed term, together with an identification of all references from the specification or prosecution history that support that construction, and an identification of any extrinsic evidence known to the party on which it intends to rely either to support its proposed construction or to oppose any other party's proposed construction, including, but not limited to, as permitted by law, dictionary definitions, citations to learned treatises and prior art, and testimony of percipient and expert witnesses;

(c)     An identification of the terms whose construction will be most significant to the resolution of the case up to a maximum of 10. The parties shall also identify any term among the 10 whose construction will be case or claim dispositive.  If the parties cannot agree on the 10 most significant terms, the parties shall identify the ones which they do agree are most significant and then they may evenly divide the remainder with each party identifying what it believes are the remaining most significant terms.  However, the total terms identified by all parties as most significant cannot exceed 10.  For example, in a case involving two parties, if the parties agree upon the identification of five terms as most significant, each may only identify two additional terms as most significant; if the parties agree upon eight such terms, each party may only identify only one additional term as most significant.

(d)     The anticipated length of time necessary for the Claim Construction Hearing;

(e)     Whether any party proposes to call one or more witnesses at the Claim

17

Construction Hearing, the identity of each such witness, and for each witness, a summary of his or her testimony including, for any expert, each opinion to be offered related to claim construction.

**4.      Opening Claim Construction Briefs and Technology Tutorials:** In accordance with the Schedule of Exhibit A, the parties shall serve and file their opening briefs and any evidence supporting their claim constructions.  Unless otherwise ordered by the Court, the parties may each, at their discretion, provide the Court, no later than the date on which their opening claim construction briefs are due, a tutorial on the technology at issue.  Any such tutorial should focus on the technology in issue and should not be used to argue claim constructions, and shall be submitted on a DVD with runtime of not more than 30 minutes.

**5.      Responsive Claim Construction Briefs and Comments on Tutorials:** In accordance with the Schedule of Exhibit A, the parties shall serve and file their responsive briefs and supporting evidence.  Each party may also comment, in writing (in no more than 5 pages), on the opposing party's tutorial.  Any such comments shall be filed no later than the date on which the responsive claim construction briefs are due.

**J.      Electronic Service:**  The parties consent to service of documents by electronic means.

## VI. TRIAL READINESS

The parties estimate that, in the event this case is not transferred to the Northern District of California (*see* Dkt. 33), the case will be ready for trial as determined by the Court. As officers of the Court, the undersigned counsel agree to cooperate with each other and the Court to promote the just, speedy and inexpensive determination of this action.

Dated: March 31, 2014

/s/ Woodrow Pollack
Woodrow H. Pollack, ct29409
Florida Bar No.: 026802
Stefan V. Stein
concurrently seeking admission
Florida Bar No.: 300527
GRAY ROBINSON, P.A.
401 E. Jackson Street, Suite 2700
Tampa, FL 33602
(813) 273-5000
(813) 273-5415 (facsimile)
woodrow.pollack@gray-robinson.com
stefan.stein@gray-robinson.com

Stephen P. McNamara, ct01220
ST. ONGE STEWARD JOHNSTON &
REENS, LLC
986 Bedford Street
Stamford, Connecticut 06905-5619
(203) 324-6155
(203) 327-1096 (facsimile)
scnamara@ssjr.com
litigation@ssjr.com

Attorneys for Plaintiff

/s/ Nagendra Setty
Nagendra Setty (phv06535)
George Kanabe (phv06536)
ORRICK, HERRINGTON &
SUTCLIFFE, LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
(415) 773-5700
(415) 773-5759 (facsimile)
nsetty@orrick.com
gkanabe@orrick.com

Andrew Ong (phv06537)
ORRICK, HERRINGTON &
SUTCLIFFE, LLP
1000 Marsh Road
Menlo Park, CA 94025-1015
(650) 614-7400
(650) 614-7401 (facsimile)
aong@orrick.com

Kevin Smith, ct24774
WIGGIN AND DANA LLP
One Century Tower
265 Church Street
New Haven, CT 06510
(203) 498-4400
(203) 782-2889 (facsimile)
ksmith@wiggin.com

Attorneys for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on March 31, 2014, a true and correct copy of the foregoing was file electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent via e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Woodrow Pollack*
Woodrow H. Pollack