IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

---------------------------------------------------------X
:
NOVITAZ, INC.                        :        3:13 CV 1613 (JBA)
:
V.                                   :
:
SHOPKICK, INC.                       :        DATE: OCTOBER 9, 2014
:
---------------------------------------------------------X

<u>RULING ON PARTIES' SUPPLEMENTAL DISPUTE OVER PROTECTIVE ORDER</u>

On November 4, 2013, plaintiff commenced this patent infringement action (Dkt. #1); on February 21, 2014, defendant filed its answer, affirmative defenses and counterclaim. (Dkt. #26). On March 19, 2014, defendant filed its Motion for Change of Venue Pursuant to 28 U.S.C. § 1404(a) (Dkt. #33), which is pending before U.S. District Judge Janet Bond Arterton (<u>see also</u> Dkts. ##35-37); oral argument is scheduled before Judge Arterton on October 28, 2014. (Dkt. #56). On June 13, 2014, Judge Arterton referred this file to this Magistrate Judge to supervise discovery. (Dkt. #39; <u>see also</u> Dkts. ##38, 40-41, 43-55, 57-65).

On August 6, 2014, this Magistrate Judge filed a Ruling on Parties' Dispute Over Protective Order (Dkt. #48), 2014 WL 3868234, which resolved two issues about which the parties disagreed. Two weeks later, a third issue, regarding software to analyze source code, surfaced, with counsel ultimately agreeing to a Stipulated Protective Order that left this third issue open for the Court's resolution. (Dkts. ##50, 52, 54-55, 57, 59-61). In accordance with deadlines set by the Court (Dkt. #59), on September 12, 2014, plaintiff filed its Supplemental Brief re Motion for Entry of Protective Order (Dkt. #62),[1] as to which

---

[1] The following exhibits were attached: plaintiff's Proposed Supplemental Protective Order Regarding Source Code (Exh. A); declaration of Jayant Ramchandani, dated September 11, 2014 ["Ramchandani Decl."](Exhs. B & E); copy of string of e-mails between counsel, dated August 6, 7,

defendant filed its Response two weeks later. (Dkt. #66).[2] Plaintiff's reply brief was filed four days later, on September 30, 2014. (Dkt. #67).[3]

Plaintiff proposes that the software to be installed on the secured computer on which the parties produce their source codes should be "Eclipse," one of the "specialized tools for reviewing and working" with source code, known as "Integrated Development Environment" ["IDE"]; according to plaintiff, IDEs "are tools typically used by software engineers and developers to manage, search, and deal with the large volumes (often many millions of lines of source code) of information." (Dkt. #62, at 2; Ramchandani Decl. ¶¶ 6-7, 9-11). Plaintiff asserts that defendant instead prefers "Gitweb," a "Revision Control and Source Code Management" ["SCM"] tool, described by plaintiff as "fundamentally different from an IDE[]" because a Revision Control and SCM system "is used by engineers to manage the changes to source code files[,]" as opposed to an IDE, which is used "for creating, reviewing, editing and compiling source code." (Dkt. #62, at 2-3; Ramchandani Decl. ¶¶ 8-9; see also Exh. C).[4] Plaintiff further points to the Stipulated Protective Order Regarding the Disclosure and Use of Discovery Materials in EPL Holdings, LLC v. Apple, Inc., Case No. 3:12-cv-4306 (JST), pending in the U.S. District Court for the Northern District of California, which provides in ¶

---

9, 11 & 15, 2014 (Exh. C); and copy of Stipulated Protective Order Regarding the Disclosure and Use of Discovery Materials, in EPL Holdings, LLC v. Apple, Inc., Case No. 3:12-cv-4306 (JST), pending in the U.S. District Court for the Northern District of California (Exh. D).

[2]Attached is defendant's proposed Modified Protective Order (Exh. 1), and declaration of Steven Stanek, dated September 25, 2014 ["Stanek Decl."](Exh. 2).

[3]Attached is a copy of the Stipulated Protective Order in Digital Reg. of Texas, LLC v. Adobe Sys. Inc., Case No. 12-CV-1971 (CW), also pending in the U.S. District Court for the Northern District of California.

[4]Plaintiff has made the analogy to the same document having been drafted on Microsoft Word as opposed to WordPerfect (Dkt. #62, at 3), a comparison which defendant has described as "inapt" and "unavailing[.]" (Dkt. #66, at 1 & n.1, 8; Stanek Decl. ¶ 17).

9(d) as follows:

> The Producing Party shall install tools that are sufficient for viewing and searching the code produced, on the platform produced, if such tools exist and are presently used in the ordinary course of the Producing Party's business. The Receiving Party's outside counsel and/or experts may request that commercially available software tools for viewing and searching Source Code be installed on the secured computer, provided, however, that (1) the Receiving Party possesses an appropriate license to such software tools; (2) the Producing Party approves such software tools (which approval may not be unreasonably withheld); and (3) such other software tools are reasonably necessary for the Receiving Party to perform its review of the Source Code consistent with all of the protections herein.

(Dkt. #62, at 3 & Exh. D at 19).

In contrast, defendant argues that the GitWeb interface installed on its source code laptop "provides all of the functionality that [plaintiff's] attorneys will need to review and understand the source code[,]" and that defendant's own engineers review its source code using the GitWeb interface. (Dkt. #66, at 4, 5; Stanek Decl. ¶¶ 12-16). Defendant contends that plaintiff "appear[s] to misunderstand (or mischaracterize) the capabilities of the GitWeb tool" which "operates as–and has all the functionality of–a source code review tool, including the ability to efficiently browse and search through source code." (Dkt. #66, at 4-5; Stanek Decl. ¶¶ 12-14). Defendant represents that GitWeb is the "primary web tool used . . . to browse and review source code for many large collaborative open source projects[.]" (Dkt. #66, at 5; Stanek Decl. ¶ 13). Defendant argues that an IDE is "not [a] mere review tool[]," and "is not a simple source code review tool, but rather a much more robust software development tool with functionality–including 'creating,' 'editing' and 'compiling' source code–that is completely unnecessary for [plaintiff's] purposes in this litigation, which is solely to review the source code." (Dkt. #66, at 6-7 & n.4; Stanek Decl. ¶ 16)(emphasis in original). Defendant has further expressed concern that its staff "already

3

spent several days configuring the security settings for the source code laptop such that only the GitWeb tool would be operational, thus eliminating the possibility that its confidential source code could be removed from the computer[,]" that "an IDE would not even run on the source code laptop as currently configured[,]" and that "the addition of an IDE, such as Eclipse, would require [defendant] to remove and completely rethink and reconfigure the security settings that are currently in place on the source code laptop." (Dkt. #66, at 8; Stanek Decl. ¶¶ 18-20).

In its reply brief, plaintiff has responded that "[t]his dispute is not over the virtues of different source code tools, but whether a party receiving source code can request its preferred tools for doing the job it is asked to do." (Dkt. #67, at 1). Plaintiff further represents that it "is not looking to build or compile [defendant's] software, nor is [plaintiff] looking to circumvent the protections installed on the secured computer or the protections provided through the protective orders." (Id. at 2).

Defendant has cited two decisions from the U.S. District Court for the Northern District of California for the proposition that "courts routinely reject the very types of requests [plaintiff] now appears to make for more expansive software (such as IDEs)–particularly when such software can potentially be used to compile source code on a review computer." (Dkt. #66, at 7, citing Digital Reg of Texas, LLC v. Adobe Sys. Inc., No. CV 12-1971 (CW/KAW), 2013 WL 633406, at *5-6 (N.D. Cal. Feb. 20, 2013) and Kelora Sys., LLC v. Target Corp., Nos. C11-1548, C10-4947, C11-1398, C11-2284 (CW/LB), 2011 WL 60000759, at *3 (N.D. Cal. Aug. 29, 2011)).

In Kelora, the plaintiff sought ten alterations or additions to the Patent Local Rule 2-2 Interim Model Protective Order in place in the U.S. District Court for the Northern District of

California ["N.D. Cal. Model Protective Order"], two of which are relevant here.[5] 2011 WL 6000759, at *1-6. Like the dispute here, ¶ 9 of the N.D. Cal. Model Protective Order, covering source code, did not address the issue of whether it is the producing party or the receiving party that can select the particular software to be utilized in analyzing the other party's source code. Plaintiff Kelora wanted defendants to "provide a complete, functional build environment because compiling the source code into object code and running the resulting software on a computer may assist Kelora's counsel and experts in evaluating the Accused Instrumentalities . . . ." Id. at *1, 3. Defendants objected on the grounds, inter alia, that Kelora's proposal "would effectively require each [defendant] to provide source code for the entire accused website even though the vast majority of the source code for each accused website is completely unrelated to the accused functionality." Id. at *3. Under these circumstances, U.S. Magistrate Judge Laurel Beeler found that plaintiff's requested departure from N.D. Cal. Model Protective Order was "unwarranted[.]" Id. at *1, 3. Similarly, Kelora requested installation on the source code computers of "commercially available, licensed software tools for viewing, searching, and annotating the source code[,]" to which defendants objected because that would open up the possibility that files could be transferred onto or away from defendants' "generally high-secure machines[.]" Id. at *1, 5. Magistrate Judge Beeler similarly found that the burdens on defendants outweighed the benefits to Kelora and that the language of the N.D. Cal. Model Protective Order was "appropriate." Id. Neither of the defendants' concerns in Kelora are applicable here given the strict parameters of the Stipulated Protective Order in this case (Dkts. ##60-61), so that the decision provides little guidance.

---

[5] A copy of the N.D. Cal. Model Protective Order was attached as Exh. 2 to defendant's July 17, 2014 Letter to this Magistrate Judge.

In contrast, this issue raised here was addressed in Digital Reg, wherein the plaintiff requested the use of a compiler software (Xcode) as a tool to review the proprietary source code that defendant Zynga had produced for inspection.  2013 WL 633406, at *5.[6]  Defendant Zynga objected to the use of "compiler tools," which it contended was in violation of ¶ 20(d) of the Stipulated Protective Order.  Paragraph 20(d) of that protective order provided as follows:

> At the request and sole expense of the party seeking discovery, the producing party shall permit authorized persons to use software tools of their choosing for searching, inspecting, and/or analyzing the "**HIGHLY CONFIDENTIAL – SOURCE CODE – OUTSIDE COUNSEL ONLY**" materials on a standalone computer.  Specifically, before viewing these materials on a standalone computer, the receiving party shall notify the producing party of the specific software desired to be used, and provide such software tools to counsel for the producing party.  Unless the producing party objects to such software tools within seven (7) calendar days of receipt of such notice, the producing party shall load such software tools on the standalone computer upon provision of such software tools by the receiving party.  The parties agree to meet and confer in good faith to resolve any such objections.  If an authorized person from the receiving party is viewing these materials on a standalone computer and wishes to use additional software tools for searching, inspecting, and/or analyzing such materials, the receiving party shall notify the producing party or non-party of such additional software tools and provide such software tools to [the] producing party or non-party, and the producing party or non-party shall use its best efforts to load such software tools as soon as practical thereafter.  At the receiving party's request, the producing party or non-party shall provide to the receiving party or non-party the identity of programming languages used to develop or edit these materials, and whether these materials were developed or edited in a UNIX or Windows environment.

(Dkt. #67, Exh. A, at 12-13)(emphasis in original).

Like here, defendant Zynga "base[d] its objection on the fact that compilers are not source code review tools, but rather developer tools, and that the creation of the functional build environment required to utilize a compiler would be unduly burdensome."  2013 WL

---

[6]The Digital Reg lawsuit concerns some of defendant Zynga's popular apps.  Id. at *4 & n.1.

633406, at *5. According to Zynga, Digital Reg already had requested three types of software for source code review, all of which Zynga was willing to install on its standalone computer (Notepad++, wingrap, and Doxygen). Id. Defendant Zynga contended that a qualified computer engineer "could use those tools to review source code quickly and efficiently without the use of a compiler[,]" whereas Digital Reg argued, like plaintiff here, that "source code review tools are not 'a real alternative' to a compiler." Id. And like defendant here, Zynga asserted that "creating a functional build environment (compiler) would impose an extraordinary burden because it would consume substantial engineering resources[.]" Id. at *6. U.S. Magistrate Judge Kandis A. Westmore denied Digital Reg's request "[i]n light of the availability of source code analyzer tools and the extraordinary burden that a compiler would impose on Zynga[.]" Id. In addition, the parties were ordered to confer further "regarding the installation of other source code analyzer tools." Id. Thus, Digital Reg was entitled to utilize the source code analyzer tools of its choice, so long as Zynga did not object (at which point the parties were to "meet and confer in good faith to resolve any such objections[]"), and as long as such tools were not compilers.

This conclusion is consistent with the Agreed Upon Protective Order Regarding the Disclosure and Use of Discovery Materials filed in Apple, Inc. v. Samsung Elec. Co., Ltd., Civ. No. 11-CV-1846 (LHK), 2012 WL 10817203, at *5-10 (N.D. Cal. Jan. 30, 2012). The precise issue raised in the instant dispute is found in ¶ 11(c) of the Agreed Upon Protective Order in the Apple case, the first two sentences of which are virtually identical to those found in the Stipulated Protective Order in the EPL Holdings case, relied upon by plaintiff here. The last three sentences of the Agreed Upon Protective Order in the Apple case provide:

> The Receiving Party must provide the Producing Party with the CD or DVD containing such licensed software tool(s) at least fourteen (14) days in advance of the date upon which the Receiving Party wishes to have the

>additional software tools available for use on the Confidential Source Code Computer.  Specific tools may include but are not limited to: Visual Slick Edit, Source-Navigator, PowerGrep, and ExamDiff Pro, or other similar programs. <u>The Receiving Party shall not at any time use any compilers, interpreters or simulators</u> in connection with the Producing Party's Source Code.

<u>Id.</u> at *7 (emphasis added).

Thus, following the Protective Orders entered in the <u>EPL Holdings</u>, <u>Digital Reg</u>, and <u>Apple</u> cases, as well as the decision in <u>Digital Reg</u>, both parties are free to install the source code analyzer tools of their choice, <u>so long as such tools are not "compilers, interpreters or simulators."</u>  If Eclipse <u>is</u> a compiler, interpreter or simulator (which it appears to be, <u>see</u> Dkt. #66, at 6), then plaintiff is not permitted to install it upon the secure computer with defendant's source code.

**On or before October 31, 2014**, counsel shall prepare a Supplemental Protective Order Regarding Source Code consistent with this ruling for the Magistrate Judge's approval.[7]

This is not a Recommended Ruling, but a ruling on a non-dispositive motion, the standard of review of which is specified in 28 U.S.C. § 636; FED. R. CIV. P. 6(a), 6(e) & 72; and Rule 72.2 of the Local Rules for United States Magistrate Judges.  As such, it is an order of the Court unless reversed or modified by the District Judge upon timely made objection.

<u>See</u> 28 U.S.C. § 636(b)**(written objections to ruling must be filed within fourteen calendar days after service of same);** FED. R. CIV. P. 6(a), 6(e) & 72; Rule 72.2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; <u>Small v. Secretary, H&HS</u>, 892 F.2d. 15, 16 (2d Cir. 1989)(failure to file timely objection to Magistrate Judge's recommended ruling may preclude further

---

[7]In an electronic order, filed September 23, 2014 (Dkt. #65), counsel were instructed to submit a revised scheduling order; to date, counsel have not complied with these instructions. Therefore, counsel shall prepare a revised scheduling order for this Magistrate Judge's review **on or before October 31, 2014**.

appeal to Second Circuit).[8]

Dated at New Haven, Connecticut, this 9th day of October, 2014.

      /s/ Joan G. Margolis, USMJ   
Joan Glazer Margolis
United States Magistrate Judge

---

[8] If either counsel believes that a settlement conference before this Magistrate Judge could be productive, he or she should contact Chambers accordingly.